# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| LORRAINE MORIN, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>EASTERN MAINE MEDICAL CENTER, )<br>)<br>Defendant ) | Civil Action No. 1:09-cv-00258 |

## DEFENDANT EASTERN MAINE MEDICAL CENTER'S SUPPORTING STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

NOW COMES the Defendant, Eastern Maine Medical Center ("EMMC"), by and through its attorneys, GROSS, MINSKY & MOGUL, P.A., and hereby, pursuant to Fed. R. Civ. P. 56 and Local Rule of the United States District Court 56(b), submits the following supporting statement of material facts as to which there is no genuine issue to be tried:

1. As of July 1, 2007, Lorraine Morin was approximately 16 weeks pregnant. (Docket No. 1, ¶ 6; Docket No. 6, ¶ 6; Declaration of Robert A. Grover, D.O. ("Grover Declaration") ¶ 5; Declaration of Paul R. Reinstein, M.D., FACEP ("Reinstein Declaration) ¶ 3.)

2. At approximately 4:30 a.m., on Sunday, July 1, 2007, Ms. Morin presented at the emergency department of EMMC ("ED") (Exhibit A to Declaration of Joseph M. Bethony "Bethony Declaration," p.2.)

3. Upon her presentation at the EMMC ED that day, her chief complaint was that she was experiencing cramping. (Bethony Declaration Exhibit A, pp. 2, 4, 6, 9; Grover Declaration ¶ 5; Reinstein Declaration ¶ 3.)

4. Shortly after her presentation at the ED, Angela Burbine, a registered nurse, examined Ms. Morin. (Bethony Declaration Exhibit A, p. 4.) Nurse Burbine took Ms. Morin's vital signs, including her temperature, heart rate, respiratory rate. (Id.) Ms. Morin also identified to Nurse Burbine the symptoms leading to her presentation at the ED (cramps), as well as indicated

1

that her cramps that were a severity of 4 on a scale of 1-10.  (Id.)

5. On the EMMC pain scale of 1-10, 1 indicates mild pain, while 10 indicates very severe pain, such as active labor contractions.  (Grover Declaration ¶ 10.)

6. At approximately 5 a.m., Paul R. Reinstein, M.D., saw Ms. Morin.  (Bethony Declaration Exhibit A, p. 2.)

7. In his examination, Dr. Reinstein noted (and later documented) that Ms. Morin was experiencing cramping.  (Bethony Declaration Exhibit A, p. 2; Reinstein Declaration ¶ 4.)

8. Dr. Reinstein performed an ultrasound on Ms. Morin, which "revealed a nonviable fetus" with no heartbeat. A pulse wave Doppler revealed no signs of a pulse in the fetus.  (Bethony Declaration Exhibit A, p. 2; Reinstein Declaration ¶ 5.)

9. Because he could neither see nor hear a fetal heartbeat, Dr. Reinstein concluded that the fetus was dead.  (Reinstein Declaration ¶ 5; Bethony Declaration Exhibit A, p. 2.)

10. Dr. Reinstein called Robert Grover, D.O., for an OB/GYN consultation.  (Bethony Declaration Exhibit A, p. 9; Reinstein Declaration ¶ 6.)

11. Dr. Grover performed the consultation at 5:25 a.m.  (Bethony Declaration Exhibit A, p. 6; Grover Declaration ¶ 4.)

12. Following a transabdominal ultrasound, Dr. Grover determined that the fetus had died, that Ms. Morin's pregnancy was no longer viable.  (Bethony Declaration Exhibit A, p. 10; Grover Declaration ¶ 7.)  Dr. Grover noted that there was neither fetal cardiac activity nor fetal motion.  (Bethony Declaration Exhibit A, p. 10.)

13. In light of Ms. Morin's symptoms and her condition, Dr. Grover recommended that she go home.  (Bethony Declaration Exhibit A, p. 10; Grover Declaration ¶ 8.)

14. At that point, because her cervix was not dilated or effaced and she did not possess other risk factors, Dr. Grover did not believe that Ms. Morin was in immediate danger of delivery or miscarriage.  (Grover Declaration ¶¶ 5, 6 & 8.)  Moreover, Dr. Grover felt that, given that her cervix was not dilated or effaced, performing a dilation and extraction presented increased risks to

Ms. Morin. ((Grover Declaration ¶ 8; Gimbel Deposition, p.34:6-13.)

15. Dr. Grover prescribed Ms. Morin a analgesic for pain relief, and gave her instructions to return to the ED should her condition worsen or change, as well as to follow-up with her primary care provider the next morning. (Bethony Declaration Exhibit A, p. 10; Grover Declaration ¶¶ 10, 11 & 13.)

16. Prior to her discharge, Ms. Morin signed a sheet entitled "Aftercare Instructions," containing the following instructions: Call your doctor if any of the following happen: (1) You get worse instead of better; (2) You are not much better in a couple of days; (3) You have any new symptoms. (Grover Declaration ¶ 11; Deposition of Lorraine (Watson) Morin "Morin Deposition" p. 39:11-14, 43:14-19; Bethony Declaration Exhibit A, p. 22.)

17. After the lab work that Dr. Grover ordered had been performed, Dr. Reinstein visited Ms. Morin. (Bethony Declaration Exhibit A, p. 6.) He documented that she "wanted to have this thing taken care of today." (Bethony Declaration Exhibit A, p. 3.) Dr. Reinstein then spoke with Dr. Grover again, who indicated that her cervix needed to be "primed"—it needed to be softened and dilated so that the fetus could be delivered— and that she ought to follow-up with Pamela Gilmore, M.D., her primary care physician. (Reinstein Declaration ¶ 7; Bethony Declaration Exhibit A, p. 3.)

18. Ms. Morin was discharged at approximately 6:15 a.m. (Bethony Declaration Exhibit A, p. 6.)

19. Dr. Grover did not believe that Ms. Morin was in active labor while she was at the ED on July 1, 2007. (Gimbel Deposition, p. 30:24-31:5, 31:16-21, 32:1-12; Grover Declaration ¶ 9.)

20. When Dr. Grover saw Ms. Morin on July 1, 2007, she was not experiencing regular uterine contractions that resulted in the cervical change (i.e., dilation and effacement) needed to effect delivery. (Grover Declaration ¶ 9.)

21. Dr. Grover diagnosed Ms. Morin as having experienced a missed abortion. (Bethony

3

Declaration Exhibit A, pp. 10, 28; Grover Declaration ¶¶ 7 & 10; Gimbel Deposition, p.24:12-14.)

22. The pain that Ms. Morin was experiencing while she was at the EMMC ED on July 1, 2007, due to her missed abortion. (Gimbel Deposition, p.25:14-16; Grover Declaration ¶¶ 9 & 10.)

23. Physicians do not consider a woman who is experiencing pain associated with a missed abortion to be in labor. (Gimbel Deposition, pp.10:20-23, 31:16-21; 32:1-12; Grover Declaration ¶¶ 9 & 10.)

24. On July 1, 2007, Ms. Morin would not have been certified, by a physician, as either experiencing active labor or false labor because she was experiencing a missed abortion. (Gimbel Deposition, pp.10:20-23, 32:1-12, 32:14-18.)

25. When Ms. Morin was discharged from the ED on July 1, 2007, Drs. Grover and Reinstein believed that she was stable and did not face any risk of harm (Grover Declaration ¶¶ 5 & 13; Reinstein Declaration ¶ 9.)

26. In terms of her vital signs, Ms. Morin was stable when she was discharged from the ED on July 1, 2007. (Gimbel Deposition, p. 15:13-23; Deposition of Annette O'Brien, RNC, LNC ("O'Brien Deposition"), p. 34:12-17; Grover Declaration ¶ 13; Reinstein Declaration ¶ 9.)

27. On the evening of July 1, 2007, Ms. Morin delivered the products of conception at home. (Morin Deposition, p. 55:14-15.)

28. Although Ms. Morin understood that part of her discharge instructions were to call her doctor should her condition worsen or change, she did not call her doctor until Monday morning. (Morin Deposition, p.43:22-44:5.)

29. Although her doctor's office did not open until Monday morning, Ms. Morin was aware that she could have, on Sunday evening, called the on-call after-hours service, expecting to receive a call back from the on-call doctor. (Morin Deposition, p. 44:4-25.)

30. Ms. Morin did not return to the ED on the evening of July 1, 2007. (Morin Deposition, p. 45:9-11.)

31. In this lawsuit, Ms. Morin is not complaining that when she presented to the ED on July 1, 2007, and while she was at the ED that day, that EMMC and/or its employees or agents failed to adequately screen her to determine whether she had an emergency medical condition. (Plaintiff's Answers to Defendant's Interrogatories No. 6.)

32. In this lawsuit, Plaintiff is not complaining that when she presented to the ED on July 1, 2007, and while she was at the ED that day, that EMMC and/or its employees or agents misdiagnosed her, or failed to exercise the requisite skill in attending, diagnosing, or treating her, or that EMMC was otherwise negligent in its diagnosis and/or treatment of her. (Plaintiff's Answers to Defendant's Interrogatories No. 7.).

Dated: February 19, 2010

/s/ George C. Schelling
George C. Schelling, Esq.
Gross, Minsky & Mogul, P.A.
23 Water Street - P.O. Box 917
Bangor, ME 04402-0917
Attorneys for Defendant, Eastern Maine Medical Center

/s/ Joseph M. Bethony
Joseph M. Bethony, Esq.
Gross, Minsky & Mogul, P.A.
23 Water Street - P.O. Box 917
Bangor, ME 04402-0917
Attorneys for Defendant, Eastern Maine Medical Center

Certificate of Service

I hereby certify that on the 19th day of February, 2010, I electronically **DEFENDANT EASTERN MAINE MEDICAL CENTER'S SUPPORTING STATEMENT OF MATERIAL FACTS NOT IN DISPUTE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: Undersigned counsel will provide a copy of the foregoing motion to counsel for Plaintiff, Julie Farr.

/s/ Joseph M. Bethony
Joseph M. Bethony, Esq.
Gross, Minsky & Mogul, P.A.
23 Water Street - P.O. Box 917
Bangor, ME 04402-0917

Attorneys for Defendant, Eastern Maine Medical Center