

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

Civil Docket No:
1:09-cv-258

* * * * * * * * * * * * * * * * * *

LORRAINE MORIN,

       Plaintiff

vs.

EASTERN MAINE MEDICAL CENTER

       Defendant

* * * * * * * * * * * * * * * * * *

**DEPOSITION OF: GREGORY GIMBEL, M.D.**

BEFORE: Melissa L. Thibodeau, RPR, Notary Public, at the offices of Eaton Peabody, 167 Park Row, Brunswick, Maine, on January 12, 2010, beginning at 9:00 a.m.

APPEARANCES

| | |
|---|---|
| Julie D. Farr, Esq. | For the Plaintiff |
| George C. Schelling, Esq. | For the Defendant |

DON THOMPSON & ASSOCIATES
Court Reporting

```
 1       situation?
 2   A   Absolutely not.
 3   Q   Why not?
 4   A   It just doesn't. I mean, by definition she wasn't in
 5       labor.
 6   Q   She was experiencing contractions?
 7   A   Well, I mean -- again, I am not prepared to spar with
 8       you as an attorney. I am prepared to tell you what
 9       doctors think. And doctors don't consider, at least
10       OB-GYN doctors, don't consider labor to be somebody
11       having a spontaneous miscarriage. No doctor -- no
12       OB-GYN doctors would call it labor.
13   Q   And I don't want to spar with you either, but you have
14       been designated as an expert to testify in this case,
15       so I have to get what your opinions are.
16   A   Well, that's my opinion. And I think you -- you will
17       be hard pressed to find another one. It's not labor
18       when somebody's miscarrying. It's not termed that.
19       We don't do it that way. I don't know anyone that
20       does. I don't. And I certainly -- that's my opinion
21       that it shouldn't be called labor, if anyone does.
22   Q   Would you agree that in reviewing Ms. Morin's medical
23       records, there was no reflection in those medical
24       records that any medical professional had certified
25       that Ms. Morin was in false labor?
```

```
 1   A   I see that as being kind of a trick question, but, of
 2       course, no one certified that because no one diagnosed
 3       that it was labor. They diagnosed that she was -- had
 4       a missed abortion. It would not classify her as being
 5       in labor. So no one would, in their right mind,
 6       certify that she was not in labor because it wasn't
 7       something that would be certified.
 8           I've never heard of a physician certifying
 9       somebody not in labor that is miscarrying or being in
10       labor, the converse, either one. That's a novel
11       definition and not one that would be used medically
12       and I doubt legally.
13   Q   What does the term false labor mean to you?
14   A   We use the term in more advanced pregnancies, again
15       not before -- certainly not before 20 weeks. But in
16       later pregnancies, we use the term to be rhythmic
17       contractions that don't result in the progressive
18       change in the cervix.
19           So I guess just to clarify that -- the paragraph
20       that you pointed out to me I would say I do not think
21       that applies to a spontaneous miscarriage. I think
22       that applies to a more advanced pregnancy probably
23       more than -- well, certainly more than 20 weeks.
24   Q   Would you agree that the fact that Lorraine Morin was
25       having rhythmic contractions meant that she was going
```

```
 1       to deliver the fetus at some point in the near future?
 2   A   It meant that she was likely somewhere in that
 3       process, but not -- it was not possible by that alone
 4       to tell how far along she was in that process.
 5   Q   To follow-up on that, at the time Ms. Morin was
 6       discharged, is there any way to predict how long it
 7       would have taken her to deliver the fetus?
 8   A   No, but they did an exam and said that her cervix
 9       was -- they misspelled it, there is a typo there, but
10       they said long and closed, which would indicate that
11       it was likely quite early, and also they indicated
12       that this had been going on for quite a number of
13       hours, the pain that she was experiencing.
14   Q   Yeah. And, in fact, in the medical records, when she
15       presented, it indicated that she had been having
16       contractions for the last 20 hours; is that correct?
17   A   My recollection is that's what they said.
18   Q   And does that information -- well, strike that.
19           Do you have an opinion based on that information
20       how long it would have taken her to deliver the fetus
21       after she was discharged?
22   A   I couldn't predict, but I would -- extrapolating you
23       would expect that it would be quite sometime in the
24       future.
25   Q   And the fact that her cervix was -- did you say long
```

```
 1       and closed?
 2   A   Yes.
 3   Q   Would that have prevented the doctors from utilizing
 4       one of the three options that you told me about for
 5       terminating the pregnancy?
 6   A   Yes, they would -- I mean, they could have used all
 7       three, but the one that I think you're referring to,
 8       the surgical option of dilation and evacuation, they
 9       could not have done immediately or they shouldn't have
10       done immediately because of risk of damaging her
11       cervix, so they would want to do some type of cervical
12       preparation before -- before doing a surgery like
13       that.
14   Q   What would the cervical preparation entail?
15   A   Usually -- again, it's not something that I do, so I
16       would have to describe what I've read and what I've
17       seen done, but they would have to place some devices
18       that swell up and cause cervical dilation to occur
19       slowly. They're called laminaria. And once it's
20       dilated sufficiently, then they might be able to
21       safely do that.
22   Q   Would another option be to simply observe her over a
23       period of hours to see whether the cervix dilates
24       naturally?
25   A   It would -- it would certainly be an option that they
```

35

1 could do that.
2 Q  And what about the other two options that you
3    mentioned, one of them was expectant, wait for nature
4    to take its course. Is there any reason why they
5    couldn't have kept Ms. Morin in the hospital and done
6    that?
7 A  I don't -- I don't know of any reason why they could
8    not, but it doesn't seem unreasonable to ask her to do
9    some of them at home, given the situation.
10 Q You also mentioned medical evacuation where they give
11   her medicine?
12 A Right.
13 Q Would that have been an option for Ms. Morin even
14   considering that her cervix was long and closed?
15 A Yes.
16 Q And how long would medical evacuation take?
17 A Well, again, this is something that could be
18   scheduled, but it's unpredictable. It could take --
19   it could take hours more than 12 hours. It could --
20   and it could be unsuccessful. It may not work.
21 Q And if they attempted medical evacuation and it was
22   unsuccessful, could they have done -- do surgical
23   evacuation?
24 A That would be the only option.
25 Q I think that's all the questions I have. Thank you.

36

1 A You're welcome.
2       MR. SCHELLING: No questions. We will read and
3 sign.
4       (The deposition was concluded at 9:56 a.m.)
5       (Read and sign was sent to Mr. Schelling.)

37

1                    CERTIFICATE
2       I, Melissa L. Thibodeau, RPR, a Notary Public in and
3 for the State of Maine, hereby certify that the
4 within-named deponent was sworn to testify to the truth,
5 the whole truth, and nothing but the truth, in the
6 aforementioned cause of action.
7       I further certify that this deposition was
8 stenographically reported by me and later reduced to print
9 through computer-aided transcription, and that the
10 foregoing is a full and true record of the testimony given
11 by the deponent.
12      I further certify that I am a disinterested
13 person in the event or outcome of the above-named cause of
14 action.
15      IN WITNESS WHEREOF, I subscribe my hand and affix
16 my seal this 15th day of January, 2010.
17
18
19                    *[signature]*
                      MELISSA L. THIBODEAU, RPR,
20                    NOTARY PUBLIC
                      Court Reporter
21
22
23
      My commission expires: February 28, 2015.
24
25

# CERTIFICATE OF DEPONENT

I, Gregory Gimbel, M.D., do hereby certify that the foregoing 36 pages is an accurate transcript of testimony given by me on January 12, 2010, in the cause of action of <u>Lorraine Morin v. Eastern Maine Medical Center</u>.

_____    _____
                                                              Gregory Gimbel, M.D.

TO BE COMPLETED BY NOTARY PUBLIC OR ATTORNEY:

I, Ellen Souviney, a Notary Public/Attorney in and for the State of Maine, hereby acknowledge that the above-named deponent personally appeared before me, swore to the truth of the foregoing statements and affixed his signature above as his own true act and deed:

(Signature)    Ellen Souviney

(Date)    February 2 2010

My Commission Expires: 03-31-16

# ERRATA SHEET

| Page #: | Line #: | Correction: |
|---|---|---|
| 13 | 19 | insert word "care" between medical and in |
| 16 | 7 | replace the word "a" with the word "the" |
| 18 | 24 | should have added — "Not however far along. We're talking about 16 weeks or less" |
| 22 | 21 | DNC should be changed to D&C |
| 28 | 9 | insert the word "as" between that and it. |