

CHARLES E. GILBERT, III
ARTHUR J. GREIF
JULIE D. FARR
LISA J. BUTLER

PEGGY B. GILBERT, OF COUNSEL

# GILBERT & GREIF, P.A.
ATTORNEYS AT LAW
**YOUR LAW PARTNER**℠
www.yourlawpartner.com
e-mail: info@yourlawpartner.com

82 COLUMBIA STREET
P.O. BOX 2339
BANGOR, ME 04402-2339

MAINE TOLL FREE
1-800-427-2293

(207) 947-2223

TELECOPIER/FAX
(207) 941-9871

June 2, 2009

Annette O'Brien RNC LNC

2274 Dalton Drive

Cortlandt Manor, NY 10567

*RE:*  *Lorraine Watson*

Dear Annette:

    Thank you for your kind agreement to review this matter. This is a potential claim under the Emergency Medical Treatment and Active Labor Act (EMTALA) against Eastern Maine Medical Center (EMMC). Our client, Lorraine Watson, was sixteen weeks pregnant when she presented to EMMC at approximately 4:30 A.M. on Sunday, July 1, 2007. Her treatment records on that date, along with a case summary which I prepared, are enclosed for your review. She was sent home at approximately 6:00 A.M., and delivered the fetus on her bathroom floor at approximately 9:00 P.M.

    We are not pursuing a medical malpractice claim and therefore the customary legal standard of negligence does not apply. Under EMTALA, a hospital may not transfer or discharge a pregnant woman having contractions until the baby, including the placenta, has been delivered, if there is a potential threat to the health or safety of the woman or the baby. EMTALA's protection applies to all pregnant women having contractions, and thus any common medical definition of "active labor" is irrelevant. To come within the protection of EMTALA, it is only necessary to show the presence of a <u>possible</u> threat of harm to the pregnant woman or the unborn child; proof of a reasonable medical probability that the threat will come to fruition is not required. It is my position that "harm" would include both physical harm and emotional harm.

    With these legal standards in mind, would you kindly address two questions? First, was Lorraine Watson "having contractions" at the time she was treated and discharged by EMMC; and second, was there a potential threat of harm to Ms. Watson at the time she was discharged?

**Affiliate Office**
GREFFARD & BLAIS, AVOCATS
5824 rue Frontenac, bureau 201
Lac-Mégantic, Québec
G6B 1H3, CANADA
(819) 583-2776

Page 2
Annette O'Brien
June 2, 2009

      Thank you in advance for your assistance with this matter. Please do not hesitate to contact me should you require any further information.

                Very truly yours,

                Julie D. Farr

JDF                 jdf@yourlawpartner.com
enclosures

O:\WATSON.LORRAINE\2009\expertletter0602.wpd

**Affiliate Office**
GREFFARD & BLAIS, AVOCATS
5824 rue Frontenac, bureau 201
Lac-Mégantic, Québec
G6B 1H3, CANADA
(819) 583-2776

Annette O'Brien RNC
Legal Nurse Consultant
2274 Dalton Drive
Cortlandt Manor, NY 10567
914-9629432
aob225@yahoo.com

June 11,2009

Julie D.Farr
82 Columbia Street
PO Box 2339
Bangor, Maine 04402-2339

RE: *Lorraine Watson*

Dear Julie,

    Thank you for consulting me on this case. After reviewing the medical records of Ms. Watson, it is clear to me that yes indeed she was having cramps upon arrival to the ER. She tells the admitting nurse she has been having cramps for approximately 20 hours every ten minutes and her pain was a 4 out of 10 on the scale. A small amount of bleeding was reported by the patient upon urination.

    An ultrasound revealed a fetal demise. The patient and her husband were visibly upset according to the nurse's notes. The patient requested that this situation be taken care of at this time.

    The patient was discharged with a narcotic prescription for pain, due to the fact that she was still in pain when leaving the hospital.

    This patient was a high risk for complications since she had previously had a caesarean section in the past and now was in labor. The incidence for a ruptured uterus is higher in these patients.

    Emotionally Ms. Watson was also at risk for postpartum depression because she had this condition with a previous pregnancy. Ms. Watson was sent home rather quickly after being seen and told that she had a fetal demise.

    Her physical and emotional needs were not met at this visit. The outcome to Ms. Watson was less than optimum since she subsequently delivered at home. She was also having a difficult time with the grief process due to this traumatic experience. She expresses this to her physician the next day and also at her follow up visit.

    Please let me know if I can be of further assistance to you .

Thank you,

*[signature]*

Annette O'Brien RNC ,LNC

Cover Sheet

From : Annette O'Brien RNC

To : Julie D. Farr

914-962-9432 (Home ) ( Fax )

Annette O'Brien RNC, LNC
2274 Dalton Drive
Cortlandt Manor, NY 10567
914-962-9432
Aob225@yahoo.com

Billing Sheet

Law firm: Gilbert & Greif, P.A.

Name of attorney: Julie D. Farr       Patient name: Lorraine Watson

Case name if different from patient:

Date: 6/11/2009     Start time:1:30     Stop time:4:30     Total hrs.3

Rate per hour: $100.00

Charge: $300.00

**GILBERT & GREIF, P.A.**                                                                 9925

DATE :        June 22, 09
CHE # :       9925
AMOUNT :      $300.00

ACCOUNT :     1
PAID TO :     Annette O'Brien, RNC, LNC
              2274 Dalton Drive
              Cortland Manor, NY
              10567

EXPLANATION :    expert fees - Lorraine Watson
CLIENT :      Lorraine Watson
MATTER :      07335096